THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JAMES CODY BRYANT, a/k/a MELODY BRYANT,<br>Defendant. | No. CR26-196-KKE<br>MOTION FOR REVOCATION OF DETENTION ORDER<br>Note on Motion Calendar: November 30, 2026<br>**FILED UNDER SEAL** |

Counsel for James Cody Bryant, who goes by Melody and uses she/her pronouns, respectfully moves this Court to review and revoke the magistrate judge's order of detention.

## I. BACKGROUND

On February 10, 2026, Jesse Van Rootselaar murdered eight people and injured 27 people in Tumbler Ridge, British Columbia, before killing herself. The victims included Van Rootselaar's mother and half-brother, a teacher, and five students at Tumbler Ridge Secondary school. Investigation revealed Van Rootselaar had shared violent fantasies with other people and with ChatGPT, but that no one, including OpenAI, had alerted law enforcement. *See* Dkt. 1 at 29 (Van Rootselaar notes that others could stop her); Mark Follman, *ChatGPT Helped Tumbler Ridge Shooter Focus on Guns, Tactics, and Terror*, Mother Jones (Sep. 24, 2026), https://www.motherjones.com/media/2026/09/chatgpt-tumbler-ridge-mass-shooter-openai [https://perma.cc/Z6WT-M79D] (describing tactical advice provided by



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

ChatGPT). Investigators also determined that Van Rootselaar, who had a long history of mental illness and drug abuse, had communicated by Discord with Ms. Bryant that morning. There is no evidence that Ms. Bryant knew that Van Rootselaar intended to drive to a school to kill children after shooting her family.

Investigators interviewed Ms. Bryant two days after the murders. She cooperated fully and cried throughout the interview, expressing horror and disbelief at Van Rootselaar's crimes. Investigators conducted a second voluntary interview on March 3, 2026, after reviewing a complete copy of the Discord chat communications between Ms. Bryant and Van Rootselaar.

After that second interview, for seven months, investigators left Ms. Bryant in the community without any restrictions on her movement or access to the internet.

## II. THE DISCORD CHATS

### A. Overview

The evidence in this case consists almost entirely of 73,858 individual texts between Van Rootselaar, using the username Brave_Kitten01595#0, and Melody Bryant, using username Meldritch_#0.[1] The texts span from August 1, 2025, to February 10, 2026. Approximately two-thirds of the texts (47,750), are from Van Rootselaar to Ms. Bryant.

### B. Van Rootselaar's homicidal fantasies

Although many of the chats are mundane, Van Rootselaar frequently rants about killing herself and others, sometimes for pages of text at a time. Van Rootselaar refers to murder/suicide as her "plan," though the contours of the plan (including the timing and target) are never made clear. Throughout the roughly 7,000 pages of text

[1] For clarity, excerpts from the Discord logs between Van Rootselaar and Ms. Bryant will be diarized using their respective last names rather than their Discord handles and redundant diarization will be trimmed.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

messages,[2] Van Rootselaar is obsessed by images of violence on the internet, particularly from the website watchpeopledie.tv. She repeatedly sends Melody links to video recordings of murder. So far as counsel has determined, Melody never sends Van Rootselaar any links celebrating violence in any way.

Melody often refuses to engage with Van Rootselaar's violent rants. Consider, for example, these three interactions from August 3, 2025, to August 10, 2025:

| | |
|---|---|
| **VAN ROOTSELAAR** | My issues are a lot of strain on others too.<br>mental ones.<br>Probably makes people less inclined to wanna interact with me |
| **BRYANT** | Yeah, I can see that<br>Occasionally is a bit much for me<br>despite me really wishing to be here for you |
| **VAN ROOTSELAAR** | I feel like u don[']t like talking to me as much lately[3] |
| **BRYANT** | I do you just usually go off on tangents I cant really respond much too |
| **VAN ROOTSELAAR** | so you don[']t like talking to me as much lately because I go on tangents |
| **BRYANT** | suppose yeah |
| **VAN ROOTSELAAR** | Yeah I guess I am pretty hard to tolerate aren[']t I? |
| **BRYANT** | I wouldnt say its a tolerance ting<br>I just really dont know how to engage with you sometimes |
| **VAN ROOTSELAAR** | Y |
| **BRYANT** | you are very focused on the shooting thiung |

---

[2] Counsel has not attached the complete chats to this motion. They are available for the Court's review upon request, but counsel respectfully asks for a brief conference before their production.

[3] Due to a character encoding error, the exported Discord logs do not contain curly apostrophes or quotation marks where they were likely intended by Van Rootselaar; instead, characters such as "â€™" represent Van Rootselaar's apostrophes in the exported chats. The defense has inserted the affected punctuation for readability purposes.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| | Yeah I'm worried of the possibility that you never get better |

Two days later, Ms. Bryant again shuts down conversation about murder:

| | |
|---|---|
| **VAN ROOTSELAAR** | Sometimes I get thoughts about ending my family members which isn[']t nice lol |
| **BRYANT** | Yeah that's not great |

And then on August 9, 2025, Ms. Bryant continues to try to divert Van Rootselaar from her plan:

| | |
|---|---|
| **VAN ROOTSELAAR** | I think it[']d work because if the police shoot me in the head I will not survive anyways so it[']s not a concern, if they shoot me in the arm or leg I won[']t die and I am still in the fight, and if they shoot me in my vest I[']ll detonate. I don[']t see how I can survive this, especially considering I won[']t surrender and **WILL** keep resisting and reaching for my gun even if I get hit.<br>I really don[']t need a huge explosive for a suicide, so why not I just use Tannerite? I wanna save the **real** explosives for my victims or first responders |
| **BRYANT** | I think I'd rather not think about it first thing in the morning after a rough night…<br>I'd just really like a normal day at some point |
| **VAN ROOTSELAAR** | Do I make your days not normal? |
| **BRYANT** | It is distressing having to think about someone close to me killing themselves |

The conversation then continues the next day, with Van Rootselaar again threatening suicide:

| | |
|---|---|
| **VAN ROOTSELAAR** | I[']ve pulled the trigger pretty hard a few times now |
| **BRYANT** | You really should stop messing with it<br>I'm not blaming you<br>I'm just negatively impacted by this, and I can only bear so much |
| **VAN ROOTSELAAR** | Idk what to do |
| **BRYANT** | Me neither |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| | I want to help you but like, I really don't know what I can do. And sometimes even talking is hard and takes such a toll on me. |

This pattern—Van Rootselaar describing violence and Ms. Bryant trying to deflect—repeats throughout the six months of chats. For instance, on Christmas Day, 2025:

| | |
|---|---|
| **VAN ROOTSELAAR** | I hope I ruin everyone[']s life when I do my plan<br>I want nobody to recover<br>How could I feel sympathy?<br>They[']re just gonna keep watching me get colder and colder as I keep getting older and idgaf anymore<br>They can cry about it when I[']ve claimed a few bodies<br>And imma steal more pills<br>Whenever I say some mentally ill ahh stuff I feel like u stop messaging me lol… |
| **BRYANT** | Harder to reply to. |

And on January 6, 2026:

| | |
|---|---|
| **VAN ROOTSELAAR** | I[']m still contemplating going<br>and also contemplating backing out and just taking myself out |
| **BRYANT** | i'll be here for you |
| **VAN ROOTSELAAR** | hardly<br>You don[']t even always reply in a timely way<br>it seems whatever game ur on at the time is usually more important |
| **BRYANT** | i never know what to type. |

Up to and including February 10, 2026, Van Rootselaar equivocates over whether she really intends to go forward with her "plan." On August 3, 2025, for example, she tells Ms. Bryant that "plan[s] to wait a while before doing it." Van Rootselaar speculates that her homicidal thoughts may seem crazy to her in the future: "Maybe I[']ll be alive in 5 years. And maybe I[']ll look back and be like [']damn I can[']t believe I was planning to kill a bunch of innocent people['] lol." And for part of this six month period, the



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

"plan" is clearly a fantasy because Van Rootselaar does not have access to guns. Eventually, however, the RCMP returned her seized weapons.

In the context of this highly equivocal "plan," Ms. Bryant sometimes joins in Van Rootselaar's fantasies. For instance, when Van Rootselaar writes about wanting to print fancy guns she has found on the internet, Ms. Bryant writes about wanting one also. She tells Van Rootselaar that if she is able to print guns, she should print a handgun also. This comment, which depends on the acquisition of 3D printing equipment that neither Van Rootselaar nor Ms. Bryant ever bought, is one of the overt acts alleged in the indictment. The chats also contain an extended discussion of how Van Rootselaar would commit mass murder if she grew to the size of a giant.

Although Ms. Bryant sometimes joins in Van Rootselaar's fantasy talk, she is consistent and unequivocal that she opposes Van Rootselaar's "plan" to hurt people. On December 1, 2025, for example, she writes: "No amount of understanding or sympathizing with you changes how the act you intend to do is horrible." And again, on December 25, 2025, Ms. Bryant writes that she hopes that withdrawal symptoms don't provoke Van Rootselaar into killing people.

### C. Ms. Bryant believes her friendship with Van Rootselaar keeps the community safe.

Van Rootselaar appears to view Ms. Bryant as a nonjudgmental sounding board for ruminating about her mental illness. Indeed, Van Rootselaar describes her homicidal fantasies as an innate characteristic that Ms. Bryant helps her to resist:

| | |
|---|---|
| **VAN ROOTSELAAR** | I **really** wanna shoot ppl, idk what to do with that feeling lmao<br>Like how do I relieve that?<br>I can[']t talk about it much even |
| **BRYANT** | Yeah I think most would snitch |
| **VAN ROOTSELAAR** | Except for you who silently discourage it and a few others who openly encourage it |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| | You[']re the only reasonable person I[']ve mentioned it to<br>Most any reasonable person would not be okay with discussing it and would probably snitch but I can actually bring it up to you<br>And obviously someone who would encourage it I can obviously trust to not snitch; like if they just give that sort of unhinged attitude I can probably assume I[']m fine<br>But you[']re not like that<br>Ur actually reasonable<br>Which is nicer |
| **BRYANT** | Yeah that's why I never wanna say you cant say these things to me |
| **VAN ROOTSELAAR** | yeah I[']ll probably just talk about it with others.<br>And they don[']t give a shit about my life lol<br>You care, so you[']re the better person to go to<br>If I couldn[']t go to you it[']d just be inherently harmful |

Similarly, on August 11, 2026:

| | |
|---|---|
| **VAN ROOTSELAAR** | I was born as someone who would enjoy shooting others<br>So shouldn[']t that mean that[']s what I should do?<br>People say you should do what you love lol |
| **BRYANT** | I dont think that's true |
| **VAN ROOTSELAAR** | why |
| **BRYANT** | a lot of people are born with harmful desires |

The chats make clear that Ms. Bryant believes, at least for the bulk of their communications, that Van Rootselaar is basically a decent person who is troubled by violent thoughts she wouldn't act on. On August 3, 2025, for example, Ms. Bryant writes to Van Rootselaar that she is "a kind person who just got stuck with negative thoughts." Ms. Bryant seems not to believe that Van Rootselaar would really hurt people:



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **VAN ROOTSELAAR** | Why do you care about me?<br>Is there something wrong with you<br>I feel like it[’]s hard to defend me im pretty awful |
| **BRYANT** | maybe there is |
| **VAN ROOTSELAAR** | maybe there is with everyone<br>Maybe ur actually better with something [“]wrong[”] |
| **BRYANT** | people are loyal to friends who are way worse |
| **VAN ROOTSELAAR** | True I[’]m nice to you at least overall<br>rare that I[’]m explicitly rude |
| **BRYANT** | you havent done anything that bad yet |
| **VAN ROOTSELAAR** | if hypothetically I could still be around after I did something super awful, like without prison or death would you still message me?<br>If I never had a consequence but still did my plan<br>or would it be that you would switch up on me once I[’]ve done the bad thing?<br>if that[’]s true will that mean that I will die with you resenting me for how I am? |
| **BRYANT** | I'd be obviously unhappy, but I dont think I'd ditch you unless it was like<br>*really* bad<br>the kind of bad thing that is uncharacteristic for you to do anyway |

Chats dated December 15, 2025.

Ms. Bryant was not alone in initially failing to understand that Van Rootselaar was genuinely dangerous. Records received in discovery show that Van Rootselaar had shared her plans widely and had received encouragement from other online contacts. She consulted ChatGPT for tactical advice. Family members and friends bought Van Rootselaar ammunition, even after her release from psychiatric hospitalization. And the RCMP removed, then returned, Van Rootselaar’s guns, one of which had been altered to enable more rapid firing. In fact, the RCMP apparently returned the gun with the alteration intact. Van Rootselaar then used the altered firearm in the shooting.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

### D. Ms. Bryant's promise not to snitch

Ms. Bryant often promises not to "snitch" on Van Rootselaar. The clear exception is if Van Rootselaar says she is going to attack a school:[4]

---

[4] The "technical advice" listed as an overt act in the indictment is Ms. Bryant's suggestion that Van Rootselaar should not attack a school:

| | |
|---|---|
| **VAN ROOTSELAAR** | The deadliest school shooting in Canada happened in 1989 and 14 people died, they were all female students because the shooter hated women and feminism and was misogynist. It was at Ã‰cole Polytechnic<br>Means if I managed to cause more than 14 deaths on a school ground like a college or sum it would make it the deadliest school shooting in all of Canadian history even if I didn[']t surpass the Nova Scotia killings<br>Getting 14 kills is a lot easier than getting 22, though if I got more than 22 it[']d be simply the deadliest shooting in Canadian history period.<br>but this motivates me to wanna go to a place of education, plus schools have lots of halls that are perfect for close quarters destruction<br>Even if I didn[']t get 14+ and become the deadliest ever, the La Loche school shooting in Saskatchewan 2016 was called ["]The deadliest school shooting in Canada in decades["] despite 2 of the victims being the shooters own brothers, 2 of the victims being teachers, and one victim dying years later in 2023 making the death toll literally only 2 whom died inside of the school, two family members murdered at home, and the one who succumb to their injuries much later.<br>so if I got over 5 that[']d steal that title<br>They used a .22 so it[']s a terrible weapon choice for an attack<br>If I end up doing this I will guaranteed be infamous<br>The competition isn[']t very tough. |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **VAN ROOTSELAAR** | u wouldn[']t be mad at me if I went to like,<br>my old HS here in town that messed up mine<br>and another of my family members education<br>instead of like a store or something right..?<br>Like I thought I heard you say something like<br>u wouldn[']t snitch ["]unless it was this["]or<br>something … |
| **BRYANT** | I think I did say that. yeah |
| **VAN ROOTSELAAR** | so you[']re gonna snitch on me? |
| **BRYANT** | if you said something like that, yeah<br>hypotheticals are fine |
| **VAN ROOTSELAAR** | Why would you do that to me?<br>that makes me quite mad |

Ms. Bryant gives several explanations for her promise not to snitch. First, she seems to believe that the trust implicit in her promise not to snitch gives Van Rootselaar a space to talk and prevents her from carrying out her plan:

| | |
|---|---|
| **BRYANT** | Mhm and I'm very clearly not helping uwu<br>Well, not helping you do anything wrong |
| **VAN ROOTSELAAR** | Yeah you want me not to<br>You help me avoid doing it for longer too<br>really<br>Without you I[']d have done it way sooner<br>I[']m sure |
| **BRYANT** | Yeah I think so<br>I'm gonna try not to feel like its my fault if<br>you do it<br>But y'know, i clearly will |

Chats dated November 11, 2025.

Ms. Bryant also does not report Van Rootselaar because Van Rootselaar insists that any equivocation on the promise not to snitch will result in violence. For example, after Ms. Bryant tells Van Rootselaar that she would call the police to stop a school shooting, Van Rootselaar threatens to move up her plans to commit murder:

---

| | |
|---|---|
| **BRYANT** | Hallways also mean a lot of ways people can<br>escape<br>Corners to turn<br>Wide open space means numbers |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **VAN ROOTSELAAR** | And I[']m feeling like maybe I should go sooner because you got me thinking of the potential idea of someone snitching on me |

Chats dated January 6, 2026.

Finally, Van Rootselaar repeatedly promises to kill her family and any police who come to visit her. On January 6, 2026, for example, she warns Melody, "Just don[']t send the cops here cuz I[']ll start killing everyone I live with and then the cops." Ms. Bryant therefore believed she could cause more harm by reporting Van Rootselaar, than by trying to talk her out of her plan:

| | |
|---|---|
| **BRYANT** | Even if i wanted to like, I'd be sending officers to their death<br>Endangering your family |
| **VAN ROOTSELAAR** | mostly my family bullets will fly everywhere<br>Surprised you[']re concerned about the police[']s lives<br>Personally I view cop deaths as inherently awesome but idk lol<br>maybe I[']m an outlier on that one |
| **BRYANT** | Cant guarantee you only get bad officers<br>So its something i consider |

Chats dated September 16, 2025.

Van Rootselaar insists that psychiatric care actually made Van Rootselaar more dangerous:

| | |
|---|---|
| **VAN ROOTSELAAR** | The psych ward and etc now is basically that thing to direct those violent emotions towards<br>Rather than me just being aimlessly suicidal like I was when I had money lmao |

Chats dated October 30, 2026.

Ms. Bryant believed Van Rootselaar's claim that referring her for psychiatric help would be counterproductive:

| | |
|---|---|
| **VAN ROOTSELAAR** | I[']m glad ur not a snitch<br>i wanna keep existing free<br>lol |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **BRYANT** | Yeah, you should |
| **VAN ROOTSELAAR** | no reason to cause me additional fear and uncertainty in my death |
| **BRYANT** | I feel as if that one person getting you thrown in the ward when we had first met was a major catalyst in getting you to this point |

Chats dated September 3, 2025.

Nonetheless, Ms. Bryant cautiously urges Van Rootselaar to get medical help and to focus on her future, rather than on hurting herself or others:

| | |
|---|---|
| **VAN ROOTSELAAR** | I really need to hurt people |
| **BRYANT** | I think you really need like medical help at this point |
| **VAN ROOTSELAAR** | I already went for fucking medical help<br>Fuck medical help |

Chats dated October 9, 2025.

After this suggestion, for almost ten pages of text, Van Rootselaar complains about her treatment in the ward, fantasizes about killing others in her community, and then threatens to commit suicide because the government has taken her guns. Ms. Bryant eventually talks her down but does not bring up medical help again.

### E. Van Rootselaar's suicidal tendences

The chat records contain many examples of Ms. Bryant trying to dissuade Van Rootselaar from acting on her "plan" because Ms. Bryant does not want Van Rootselaar to die. To cite just a few examples, on August 4, 2025, Ms. Bryant discourages Van Rootselaar from committing suicide:

| | |
|---|---|
| **VAN ROOTSELAAR** | Gotta be careful with the trigger now, I don[']t wanna send a round into my wall accidentally<br>If I send a round at all I want it to be into myself<br>not wasted |
| **BRYANT** | Don't leave it loaded like that<br>Please just keep it unloaded for a bit |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **VAN ROOTSELAAR** | I have it loaded with one singular round for an obvious reason<br>:p<br>I hate how easy it would be but how hard it is to pull the trigger<br>The tactile sensation of the cold barrel on my forehead makes it even harder to press down the trigger<br>I wish it wasn[']t such a heavy triggerâ€¦<br>I[']ve pressed it gently a few times but I really have to commit if I want it to go off it hasn[']t fired obviously |
| **BRYANT** | Jess I'm here<br>Do you wanna call |
| **VAN ROOTSELAAR** | I wouldn[']t be able to say much |
| **BRYANT** | I guess I wouldnt either<br>I don't know what to say |
| **VAN ROOTSELAAR** | Idk what to do |
| **BRYANT** | I wish I could do anything to ease your burdens<br>I feel selfish for wanting you to stick around sometimes |

On December 8, 2025, Ms. Bryant urges Van Rootselaar to postpone her planned murder/suicide:

| | |
|---|---|
| **VAN ROOTSELAAR** | It[']s hard to not kill myself but I want to do it to others first<br>I don[']t wanna just die here in this home |
| **BRYANT** | I think it's a perfect opportunity to try and go a little while longer. |

And later the same day:

| | |
|---|---|
| **VAN ROOTSELAAR** | I[']m chilly tbh<br>should turn my heater on<br>honestly the most reasonable thing I could do right now is shoot myself, but I don[']t wanna. pointless death, even if it hurts to keep going I should |
| **BRYANT** | I think turning the heater on is a little more reasonable |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

On December 18, 2025, Ms. Bryant tells Van Rootselaar that her insistence on dying is making her cry:

| | |
|---|---|
| **VAN ROOTSELAAR** | Sucks that I make u cry |
| **BRYANT** | eh its fine. just means I care |
| **VAN ROOTSELAAR** | Do you think there[']s anything specific that prompts you to feel like crying? Like do you think of something sad?... |
| **VAN ROOTSELAAR** | What do u think of… |
| **BRYANT** | losing you |

**F. Ms. Bryant's efforts to persuade Van Rootselaar not to hurt others**

Ms. Bryant often tries to persuade Van Rootselaar to consider others. For example, on August 10, 2025, Ms. Bryant discourages Van Rootselaar's fantasies about killing her family:

| | |
|---|---|
| **VAN ROOTSELAAR** | I left home because I don[']t wanna start killing people<br>Got followed around by one of my lovely family members whilst I had my panic attack<br>God I hate them, I hate them all<br>There are no good humans. |
| **BRYANT** | They probably just wanted to make sure you're okay |

On October 10, 2026, Ms. Bryant urges Van Rootselaar to think about how her murder/suicide would affect Ms. Bryant:

| | |
|---|---|
| **BRYANT** | I'm not going to try to make any more friends if you die honestly |
| **VAN ROOTSELAAR** | That[']s sad |
| **BRYANT** | I just dont want to keep losing people |

And, in a conversation on December 15, 2025, Ms. Bryant tries to get Van Rootselaar to empathize with her victims:

| | |
|---|---|
| **VAN ROOTSELAAR** | Why does me succeeding even matter that much<br>like I don[']t get why anyone even cares about those people I may harm lol<br>Can[']t wrap my head around it |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **BRYANT** | Idk they may be important to other people |
| **VAN ROOTSELAAR** | You[’]ll never meet them |
| **BRYANT** | Well, think about it like this |
| **VAN ROOTSELAAR** | Well if I could get to and kill those people too then that would be great what does it matter ? |
| **BRYANT** | What if I go to the mall and a shooter gets me?<br>Sure, they get a lot of people you simply dont know or wouldn't care about |
| **VAN ROOTSELAAR** | well<br>I[’]m sure if the mall shooter could get to me<br>He[’]d harm me too |
| **BRYANT** | But suddenly because someone decided they would make it their mission to hurt others, you lose someone |
| **VAN ROOTSELAAR** | that[’]s his thing<br>Can[’]t control them they[’]re not me<br>But yeah I[’]d be bothered<br>By you getting killed<br>Or by if he hurt me directly |
| **BRYANT** | Someone you hurt could be incredibly important to someone |
| **VAN ROOTSELAAR** | Yeah and I don[’]t care? |
| **BRYANT** | And idk, that is the part that really fucks with me |

**G. Ms. Bryant stops Van Rootselaar’s plans**

On at least three occasions, Van Rootselaar announces that she is going to proceed with her plan imminently, only to be talked out of killing people. Ms. Bryant first talked Van Rootselaar out of committing murdering people in December 2025:

| | |
|---|---|
| **VAN ROOTSELAAR** | I[’]m not sure what I[’]m gonna do for my plan<br>might have to come up with it as opportunities arise |
| **BRYANT** | Not having it set in stone might be a good reason to back off on it for a while at least |
| **VAN ROOTSELAAR** | you always tell me that<br>I[’]ll do it when I feel like it<br>You won[’]t succeed in sowing seeds of uncertainty |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| | I[']m gonna do what I[']m gonna do<br>And we[']ll see what that ends up being |
| **BRYANT** | Im just saying if you are uncertain, maybe take it as a sign |
| **VAN ROOTSELAAR** | I[']m just a bit afraid but still determined |
| **BRYANT** | Being unfocused might make it worse |

Again, on January 5, 2026, Ms. Bryant talks Van Rootselaar out of killing people the next day, even going so far as to recommend suicide over murder:

| | |
|---|---|
| **BRYANT** | I truly hope you reconsider today<br>I wish there were any other path for you, you shouldn't have to do something like this<br>I wish i knew what I could say or do to change your mind<br>There's so much more you can do with your life, Jess |
| **VAN ROOTSELAAR** | :/<br>idk |
| **BRYANT** | I know you can get better, I see glimpses of it all the time |
| **VAN ROOTSELAAR** | Like what? |
| **BRYANT** | I see you enjoying caring for Prince,[5] or being happy with making things<br>Its a start<br>I've gotten you to commit time watching longer things with me |
| **VAN ROOTSELAAR** | these are such tiny things |
| **BRYANT** | They are<br>But you gotta take small steps at first |
| **VAN ROOTSELAAR** | I[']m tired of taking small steps |
| **BRYANT** | Ruining other people's lives isn't the answer |
| **VAN ROOTSELAAR** | Idc about their lives<br>The only tragedy is the loss of my own life |
| **BRYANT** | So, avoid that tragedy |
| **VAN ROOTSELAAR** | bro<br>you do not get it<br>I am going to die. |
| **BRYANT** | You dont have to die now though |
| **VAN ROOTSELAAR** | I don[']t want to suffer longer |
| **BRYANT** | You won't always suffer |

[5] Prince is Van Rootselaar's cat.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **VAN ROOTSELAAR** | I love when people lie to me lol<br>should I kill myself |
| **BRYANT** | I dont think I can answer that, legally speaking, right? |
| **VAN ROOTSELAAR** | idk<br>so is that a yes |
| **BRYANT** | I know people in other contexts have been charged for saying as much |
| **VAN ROOTSELAAR** | I[']m nauseous<br>I don[']t want to live anymore |
| **BRYANT** | I want as few people to suffer as possible |
| **VAN ROOTSELAAR** | idc what you want<br>I want others to suffer and I want my own suffering to be over |
| **BRYANT** | I don't want you to suffer |

Discord chats dated January 5, 2026.[6]

On February 4, 2026, just days before Van Rootselaar killed her family and attacked her high school, Ms. Bryant again tried to dissuade her:

| | |
|---|---|
| **VAN ROOTSELAAR** | I don[']t need to do anything yet I still may |
| **BRYANT** | Suppose, but still<br>You seemed to be making a lil progress with how earlier you mentioned not really needing to do ur plan |
| **VAN ROOTSELAAR** | I[']m just saying shit to make me less stressed out<br>I[']m most likely 99% chance of doing it<br>Tbh |
| **BRYANT** | Are you sure you arent saying that to make you less stressed out about it |
| **VAN ROOTSELAAR** | Provide myself the illusion of alternatives<br>?<br>Isn[']t that exactly what I just said |
| **BRYANT** | Make it seem like its inevitable so its easier |
| **VAN ROOTSELAAR** | Make what seem like it[']s inevitable |
| **BRYANT** | You doing your plan |
| **VAN ROOTSELAAR** | What for? |

[6] This discussion concerns the first suicide or murder/suicide event for which Melody agreed to watch a livestream. The context reproduced above shows that Melody agreed to view the stream but disagreed with Van Rootselaar's plan to commit murders.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| | It stresses me out that it feels inevitable not the opposite<br>lol |
| **BRYANT** | Then maybe postponing is generally a good idea |
| **VAN ROOTSELAAR** | Can you just stop giving me suggestions and let me figure it out myself |
| **BRYANT** | Okay |
| **VAN ROOTSELAAR** | thx <3 |
| **BRYANT** | I dont mean to be trying to make firm suggestions but with this topic it kinda just happens |
| **VAN ROOTSELAAR** | You[']re allowed to have your opinion on what you want me to do or what you think I should do |
| **VAN ROOTSELAAR** | Id just rather figure it out myself |
| **BRYANT** | I just wanna encourage you to think it over properly |

Finally, on February 10, 2026, the day of the murders, Ms. Bryant unsuccessfully tried to dissuade Van Rootselaar from action:

| | |
|---|---|
| **VAN ROOTSELAAR** | If I do back out today then tomorrow im probably gonna snort the rest of my ketamine and try to get drunk then I[']m blowing my shit SMOOVE off with that 12ga lol<br>Because clearly if I back out today then I[']m simply not cut out for it |
| **BRYANT** | Well its not like its ur destiny or some shit<br>Its not even a thing you wanna do |
| **VAN ROOTSELAAR** | I don[']t believe in destiny or anything like that<br>I kinda do<br>There are just some parts I feel less comfortable with<br>Like hurting my family or dying myself |
| **BRYANT** | I think you just feel obligated to |
| **VAN ROOTSELAAR** | I don[']t<br>^ |
| **BRYANT** | "make something of your life" "make things fair"<br>Besides today seems like a bad day since you got someone there |

. . . .

| | |
|---|---|
| **BRYANT** | Losing two besties in like such a short time period is kinda fucked tho<br>Maybe I'm cursed too |
| **VAN ROOTSELAAR** | Bro wtf do you want me to do<br>Become unsuicidal?<br>lol |
| **BRYANT** | Yeah |

. . . .

| | |
|---|---|
| **VAN ROOTSELAAR** | Apparently a second person is going to be here. Because they threw a fit and headbutted someone at school<br>Guess that means I[’]ll have to make more noise than I wanted to |
| **BRYANT** | Today doesnt have to be the day<br>Its not a special day right |
| **VAN ROOTSELAAR** | I took all my benzos I need to do it today they make me calm<br>And it[’]s the 10th so it[’]s an even day |
| **BRYANT** | This doesn't really matter<br>And you didnt sound super calm a second ago |
| **VAN ROOTSELAAR** | I pressed th gun to my head like 5 minutes ago<br>Seems I still am unwilling to leave quietly whilst we[’]ve been on this call |
| **BRYANT** | Or just unwilling to leave<br>Needing to force yourself into a situation where you'll die |
| **VAN ROOTSELAAR** | I[’]m sorry it has to be this way |
| **BRYANT** | I'm sorry too |
| **VAN ROOTSELAAR** | You have nothing to be sorry for |
| **BRYANT** | I just really wish there was any other way |

**H. The livestream**

Van Rootselaar indicated that she would send Ms. Bryant and others a link to video of her “plan.” Ms. Bryant agreed to watch and to try to disseminate a screen capture to the “gore sites” that Van Rootselaar loved, though Ms. Bryant stated that she did not want to do so:

| | |
|---|---|
| **VAN ROOTSELAAR** | Will u be ready if I dropped a livestream link?<br>If I failed at live streaming at least I’d probably get a higher death toll cuz I wouldn’t have to worry about getting a clean picture or acting “normal” on camera |



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

| | |
|---|---|
| **BRYANT** | I'll have to be, I suppose |
| **VAN ROOTSELAAR** | Will u tho? lol<br>Like I kinda only have one shot<br>Right after I take that car im probably soon after getting the cops called on me<br>Probably before I even arrive on scene |
| **BRYANT** | dont have a choice lol |
| **VAN ROOTSELAAR** | yeah but wut if u don't reply to me or ignore my message or fall asleep |
| **BRYANT** | I dont know |
| **VAN ROOTSELAAR** | Eh well I guess I'd just have to not stream it then<br>I mean tbh<br>I have actually said to a few others that I would send them the link too so technically one of them could get it… |
| **BRYANT** | its quite a thing to have to do but I will if I have to |
| **VAN ROOTSELAAR** | Screen recording isn't too hard I figure |
| **BRYANT** | that isn't the hard part |
| **VAN ROOTSELAAR** | What is?<br>Like me dying? |
| **BRYANT** | yeah, watching you die like that |

As this exchange reflects, Ms. Bryant always made clear that her agreement to livestream her friend's final moments did not indicate agreement with Van Rootselaar's actions. And Van Rootselaar made clear that she would commit her crimes even if Ms. Bryant was not watching or recording. For instance, on February 10, 2026, shortly before killing her family, Van Rootselaar texted: "And once again I[']m going to follow through without you if you leave."

## III. THE COMPLAINT

On October 6, 2026, seven months after interviewing Ms. Bryant and reviewing her chats, law enforcement scheduled a third interview with Ms. Bryant, who again made herself available to speak with law enforcement. The FBI arrested Ms. Bryant at her home without incident.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

The arrest was timed to coincide with a press conference attended by U.S. and Canadian law enforcement authorities. At that event, "acting U.S. Attorney Neil Floyd[7] . . . . said Bryant had the knowledge and ability to alert law enforcement about Rootselaar's plans, but chose not to." *U.S. resident charged with offering advice, money to Tumbler Ridge killer in months before mass shooting*, CBC (Oct. 6, 2026), https://www.cbc.ca/news/canada/british-columbia/livestory/tumbler-ridge-mass-shooting-arrest-9.7371316 [https://perma.cc/6FVR-5FLC]; Press Release, U.S. Attorney's Office, Western District of Washington, Bellingham resident charged with conspiring to commit murder in connection with school shooting in Tumbler Ridge, B.C. (Oct. 6, 2026), https://www.justice.gov/usao-wdwa/pr/bellingham-resident-charged-conspiring-commit-murder-connection-school-shooting [https://perma.cc/V8YE-R8SR].

That afternoon, the government filed a 41-page complaint that purported to detail probable cause to believe that Ms. Bryant had conspired with Van Rootselaar to kill people in Canada. The complaint is replete with distortions. Perhaps most egregiously, the affiant rearranged the texts to make it appear that Ms. Bryant was agreeing to help Van Rootselaar build a bomb. Here is the section of the complaint in which the government claims that Ms. Bryant sent Van Rootselaar cash to buy a lighter for a bomb:

> **Van Rootselaar**: Sadly the original lid to my Molotov broke also on top of how the tape did earlier. I fixed it up tho. But I made a new lid via this stretchy pink thing and some sealant lol.
>
> **Van Rootselaar**: It's crazy how many flammable things are in this. Even explosive. I dumped two shotgun shells in dis, I also put 2 full entire .22lr rounds cuz why not lol, and also the crude kcio3 and sugar rocket mixture stuf can also push

[7] Mr. Floyd is not the acting U.S. Attorney.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

the material out and spread it. I bet this can make a whole room go up super quickly.
**Bryant**: sounds dangerous
**Van Rootselaar**: that's kinda the point ya
**Van Rootselaar**: The fire should make the situation more complex for first responders, the smoke can make it harder to tell if a person they see is a threat or if they are simply someone trying to escape or run away. Which would make them encroaching on me slower due to them having to be careful to identify who is a threat through the haze of putrid black smoke. Lol I should've put glitter in it before I sealed it glitter is annoying and cute.
**Bryant**: Lol. Molten glitter
**Van Rootselaar**: I put that blue rubber band on the bottle so when its time for me to leave I can take whatever lighter I've been using at the time to light my weed and I can pin it between the rubber band and the bottle to bring with me and have readily accessible to use for the bottle. Smart to have the lighter accessible as quickly as possible so I can get back to shooting.
**Van Rootselaar**: Mel do u hav $ to spare I need a lighter and maybe like a monster cuz my sleep schedule is backwards n im trying to stay up
**Bryant**: check ur paypal
**Van Rootselaar**: ur so amazing

Dkt. 1 at 18–19.

Although the complaint portrays these chats as happening in the same conversation, the full transcript shows that two days and 225 messages pass between the message in which Van Rootselaar says it is "smart to have the lighter accessible" for a bomb and the message in which she asks for money to buy a lighter and a monster drink. The government's decision to place these texts together in the complaint, when they are not contiguous in the evidence, seems designed to lead the magistrate judge to make a false inference. In fact, nowhere in the complete chats does Van Rootselaar say that she needs a lighter for the bomb. Nowhere does Bryant offer to provide Van Rootselaar a lighter for that purpose.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

The inference that Ms. Bryant is sending a lighter to build a bomb also is undermined by the fact, also omitted from the complaint, that Van Rootselaar was constantly losing and acquiring the lighters she used for smoking cigarettes and marijuana: On November 11, 2025, Van Rootselaar writes that she has lost her lighter and, three days later, that she has found her lighter. On December 8, 2025, Van Rootselaar reports that someone is dropping off a lighter and some milk. On December 30, 2026, she complains that she has cigs but no lighter. Then, two days later, she again has a lighter. On January 20, 2026, amidst texts about building a bomb, Van Rootselaar sends a photo of her using a lighter to light a cross-shaped bong. Then, five days later, she asks for money to buy a lighter and a monster drink. She then sends a photo of the incendiary device, which already has the same lighter shown in the January 20, 2026, video attached with a rubber band.

## IV. THE DETENTION HEARING

U.S. Pretrial Services, after speaking with Ms. Bryant's community, recommended release on conditions, concluding that "[t]here appear to be conditions of release that would reasonably assure future Court appearances and address danger to other persons or the community." Pretrial services therefore recommended release, subject to seven special conditions.

The government's argument focused on the complaint's incorrect narrative about Ms. Bryant helping to build a bomb by attempting to send money to buy a lighter. *See* Ex. 1 (Detention Hearing Transcript) at 6–7. The government also argued that Ms. Bryant's callousness to Van Rootselaar's homicidal fantasies showed that she did not have the "character" to remain free in the community. *Id.* at 8. The government did not mention Ms. Bryant's efforts to dissuade Van Rootselaar or persuade her to empathize with her potential victims. The defense, of course, did not yet have any access to the chats.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Ultimately, Magistrate Judge Theiler ordered Ms. Bryant detained. She reasoned that Ms. Bryant posed a danger if permitted access to the internet, and that no conditions would be sufficient to prevent that access. The magistrate judge's order contains several factual mistakes. First, the judge suggested that Ms. Bryant had taken advantage of Van Rootselaar, who the judge described as "a tragically vulnerable unstable individual." Ex. 1 at 24:19. But the government has never argued that Ms. Bryant groomed Van Rootselaar because the evidence is strongly to the contrary. Second, the magistrate judge concluded, again without evidence, that Ms. Bryant suffers from a "deeply rooted" mental illness and substance abuse history. Ex. 1 at 23:19. In fact, records show she is only currently being treated for "gender dysphoria." Ms. Bryant's primary care physician prescribed her hydroxyzine for occasional anxiety on December 13, 2024, but she did not renew that prescription and no longer takes the drug.

## V. MOTION TO REVOKE DETENTION ORDER

### A. Standard of review

This Court reviews the magistrate judge's pretrial detention order de novo. 18 U.S.C. § 3145(b); *United States v. Koenig*, 912 F. 2d 1190, 1192-93 (9th Cir. 1990). That is: this Court must review the evidence before the magistrate judge and any additional evidence proffered by the parties "and make its own independent determination whether the magistrate's findings are correct with no deference." *Koenig*, F. 2d at 1193.

### B. The least restrictive means of reasonably assuring Ms. Bryant's appearance and protecting the community is release on conditions recommended by the Pretrial Services Office.

18 U.S.C. § 3142(e) creates a rebuttable presumption of detention for defendants charged with certain dangerous crimes. That presumption, which applies here, places on the defendant the burden of producing "some evidence" in support of release.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

*United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991). "The burden of production is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986). If the defendant produces *any* credible evidence as to one of the § 3142(g) factors—for example, "family and employment status, community ties, lack of criminal record"—the burden shifts to the prosecutor to prove, by clear and convincing evidence, that no condition or combination of conditions could reasonably secure the safety of the community. *See* John L. Weinberg, Federal Bail and Detention Handbook 2018 [6.11], PLI Press (New York, 2018). Furthermore, "[a] defendant cannot be detained as dangerous under § 3142(e), *even if the presumption is not rebutted*, unless a finding is made that no release conditions will reasonably assure the safety of the community." *Dominguez*, 783 F.2d at 707 (internal citations omitted and emphasis added); 18 U.S.C. § 3142(c)(1)(B).

Here, because Ms. Bryant produced credible evidence that rebuts the presumption, and because the government cannot meet its burden to show there are no conditions or combination of conditions that would reasonably assure Ms. Bryant's appearance or protect the community, the Court should order her release pursuant to appropriate conditions, which may include home confinement, mental health treatment if an assessment determines it is appropriate, and restrictions on her use of digital devices.

### C. Ms. Bryant has produced "some evidence" rebutting the rebuttable presumption of detention

As noted above, the Bail Reform Act does not require Ms. Bryant to show that she is innocent or to produce evidence relating to each of the § 3142(g) factors to rebut the presumption of dangerousness at § 3142(e). Instead, she need only produce evidence relating to any one of the factors listed in § 3142(g) including marital, family, and employment status, community ties, or lack of criminal record.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Here, however, Ms. Bryant has presented evidence, including through the Pretrial Services Report, related to each of the § 3142(g) factors, any one of which would be sufficient to rebut the presumption of detention. It is undisputed that she has a stable residence, no criminal history, employment history, and strong community ties. Ms. Bryant also voluntarily met with investigators on at least three occasions, including the day of her arrest. By any measure, this is sufficient to satisfy Ms. Bryant's burden to produce "some credible evidence" favoring release.

**D. The government has not met its burden to establish that no conditions can reasonably protect the public.**

Because Ms. Bryant has rebutted the presumption of detention, the government bears the burden of persuasion to show by clear and convincing evidence that no combination of conditions would "reasonably assure" the safety of the community. Release conditions need only provide "reasonable assurance"; it is reversible error to detain a defendant in order to "guarantee" community safety. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). Further, "[t]o give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. June 18, 1992) (*citing United States v. Motamedi*, 767 F.2d 1403, 1405–06 (9th Cir. 1985)). "Only in rare circumstances should release be denied." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

The Court evaluates the government's argument for detention with reference to four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and (4) the nature and seriousness of the danger to any person or



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

the community that would be posed by the defendant's release. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).

**1. The nature of the offense**

"Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty . . . . **These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community**." *Motamedi*, 767 F.2d at 1408 (reversing detention order where "the district court accorded great weight to the charges against Motamedi and the Government's assertions of his guilt") (internal citations omitted and emphasis added).

Here, while the alleged crime is extremely serious, the alleged conduct is highly specific to the friendship between Ms. Bryant and Van Rootselaar, a young person with longstanding homicidal fantasies that far predated her relationship with Ms. Bryant. The government has never contended (and there is no evidence) that Ms. Bryant recruited Van Rootselaar to commit violence or groomed her to do so. And there is no evidence that Ms. Bryant has ever been in contact with any other person with similarly violent fantasies. There is no evidence, for example, that Ms. Bryant visits sites or chat communities that glorify violence. Absent any evidence of any similar relationships, there is simply no basis for concluding that Ms. Bryant poses an unmanageable risk of future danger.

**2. The weight of the evidence against the person.**

"Although the weight of the evidence is the least important of the various factors, this is only true if the weight of the evidence is used to buttress a decision to detain the defendant. If the evidence against a defendant is weak, that becomes an important factor favoring release." *Chen*, 820 F. Supp. at 1207.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

Conspiracy requires shared purpose between two or more people. *See* Ninth Circuit Model Criminal Jury Instruction 1.11. *See also United States v. Williams*, 998 F.3d 716, 728 (6th Cir. 2021) ("Conspiracy requires: '(1) An object to be accomplished; (2) a plan or scheme embodying means to accomplish that object; and (3) [a]n agreement or understanding between two or more of the defendants whereby they become definitely committed to cooperate for the accomplishment of the object by the means embodied in the agreement, or by any effectual means.'") (internal citations omitted). To prove this alleged conspiracy to murder persons in a foreign country, therefore, the government must prove beyond a reasonable doubt that Ms. Bryant wanted Van Rootselaar to kill people in Canada.

But the evidence of an agreement to murder people in Canada is extremely weak. In fact, the chats make overwhelmingly clear that Ms. Bryant did not share—and in fact opposed—Van Rootselaar's plans to murder others. From the first chats in August 2025 until the day Van Rootselaar killed her family and attacked a school, Ms. Bryant attempted to distract and dissuade her friend from her murderous purpose.

The overt acts alleged in the indictment reveal the weakness of the government's case. The context that the government omitted from the complaint reveals that Ms. Bryant did not try to help Van Rootselaar build a bomb. Ms. Bryant's jokes about the incongruity of a stickers on guns and impractical oxfords on a mass murderer may be tasteless and, in retrospect, were ill considered, but they are protected by the First Amendment because Van Rootselaar had made clear that she had no immediate intention to commit an act of violence. *See Brandenburg v. Ohio*, 395 U.S. 444 (1969) (The First Amendment does not permit government "to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."). For better or worse, the First Amendment also protects their debate about whether a



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

school shooting or attack on a crowd would be more likely to make someone infamous, even if the government tries to recast that conversation as "tactical advice." *Id*. Because neither Ms. Bryant, OpenAI, watchpeopledie.tv, the many people Van Rootselaar communicated with online, Van Rootselaar's family, nor the RCMP wanted Van Rootselaar to use her firearms to kill anyone, none are responsible as coconspirators for her actions, even if each of these provided services that helped Van Rootselaar commit her crime.

Finally, while it is horrifying in retrospect to imagine that Ms. Bryant might have stopped Van Rootselaar from committing a terrible crime if she had contacted the police, it is undisputed that the law provided no affirmative duty to do so. Furthermore, the chats reveal that Ms. Bryant reasonably feared that reporting Van Rootselaar might trigger a massacre. And because Van Rootselaar had been talking about killing people nearly every day for at least six months, Ms. Bryant did not understand when violence was imminent. In the past, Ms. Bryant had repeatedly been able talk Van Rootselaar out of committing a crime.

Ms. Bryant's chats are clear that her agreement to watch a livestream of Van Rootselaar's last acts and, if possible, to distribute it *do not* reflect agreement with Van Rootselaar's plans to kill people. Van Rootselaar's chats are equally clear that she is going to commit these crimes regardless of Ms. Bryant's willingness to distribute the livestream. Accordingly, even if the government proves that there was an unlawful conspiracy to record a crime, that conspiracy does not prove an agreement to kill people in Canada.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

### 3. The history and characteristics of the person, including the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings

As U.S. Pretrial Services notes, these factors heavily favor release. Ms. Bryant has never before been arrested or suspected of any misconduct. Until her arrest, she enjoyed stable employment. U.S. Probation has reviewed her housing and community ties and found that both favor release. Ms. Bryant has never failed to comply with any court order.

Ms. Bryant's drug use is limited to legal use of marijuana, from which she has agreed to abstain. And there is no evidence of a mental health concern. Ms. Bryant's records show that her primary care provider prescribed a drug for anxiety in December 2024, but that Ms. Bryant has not renewed it. Ms. Bryant is not suicidal. While the chats reveal that Ms. Bryant can be despondent and overwhelmed, there is no evidence that Ms. Bryant has ever planned or acted to end her life. To the contrary, the evidence showed Ms. Bryant is acutely aware that suffering passes and frequently tried to talk Van Rootselaar out of committing suicide.

### 4. The nature and seriousness of the danger to any person or the community that would be posed by the person's release

This factor requires the government to clearly identify the danger that cannot be mitigated by appropriate conditions. And here, because there is simply no evidence that Ms. Bryant has or wants any other relationships like her relationship with Van Rootselaar, the government cannot identify the nature of the threat that Ms. Bryant would pose if permitted to remain at liberty during the pendency of her case. Indeed, the government's willingness to leave Ms. Bryant in the community for seven months after reviewing her Discord chats proves that she did not, and does not, pose any danger.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**

## VI. CONCLUSION

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Giving due weight to this constitutional principle, Ms. Bryant respectfully asks the Court order her release on the conditions recommended by Pretrial Services.

DATED this 18th day of November 2026.

Respectfully submitted,

s/ *Gregory Murphy*
s/ *Dennis Carroll*
Assistant Federal Public Defenders
Attorneys for Melody Bryant

We certify this motion contains 8,570 words in compliance with the Local Criminal Rules.



**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, WA 98101**
**(206) 553-1100**